John Alexander Short, Esquire
Attorney ID No.: 328905
Raymond G. Lahoud, Esquire*
* *Pro Hac Vice* forthcoming
Norris McLaughlin, P.A.
515 West Hamilton Street, Suite 502
Allentown, PA 18101
P:  484-544-0022
jashort@norris-law.com
rglahoud@norris-law.com

John A. VanLuvanee, Esquire
Attorney ID No.: 15974
Eastburn and Gray, P.C.
PO Box 1389
Doylestown, PA  18901
P:  215-345-7000
jvanluvanee@eastburngray.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **EXCHANGE 12, LLC**<br>1177 Sixth Street<br>Whitehall, PA 18052,<br><br>      Plaintiff,<br><br>      v.<br><br>**PALMER TOWNSHIP**<br>3 Weller Place<br>Easton, PA 18045,<br><br>      -and-<br><br>**BOARD OF SUPERVISORS OF PALMER TOWNSHIP**<br>3 Weller Place<br>Easton PA 18045,<br><br>      Defendants. | **CIVIL ACTION NO.:**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, Exchange 12, LLC, by and through its attorneys, Norris McLaughlin, P.A. and Eastburn and Gray, PC, files this complaint against Defendants, Palmer Township and the Board of Supervisors of Palmer Township.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a).

2. Venue lies in this judicial district pursuant to 28 U.S.C. § 1391.

3. This action is brought pursuant to 42 U.S.C. § 1983 and the United States Constitution.

## PARTIES

4. Plaintiff, Exchange 12, LLC ("Plaintiff"), is a Pennsylvania limited liability company maintaining its office at 1177 Sixth Street, Whitehall, PA 18052.

5. Defendant, Palmer Township ("Defendant-Township"), is a township of the second class duly organized and established under the laws of the Commonwealth of Pennsylvania.  Defendant-Township maintains a business address at Palmer Township Municipal Building, 3 Weller Place, Easton, PA 18045.

6. Defendant, the Board of Supervisors of Palmer Township, is the governing body" of Defendant-Township.  Defendant-Board is inclusive of Defendant-Board that were members of Defendant-Board from January 1, 2021 until December 31, 2021 and from January of 2022 until the commencement of this action (collectively referred to as ("Defendant-Board").  From on or about January 1, 2021, until December 31, 2021, a time

of relevance to this action, Defendant-Board consisted of David E. Colver ("Colver"), Ann-Marie Panella ("Panella"), Jeffrey Young ("Young"), K. Michael Mitchell, and Robert Smith ("Smith") (collectively referred to as ("Board-1"). From January of 2022 until the commencement of this action, which includes times relevant to this action, Defendant-Board consists of Mitchell, Panella, Young, Michael Brett ("Brett"), and Joseph Armato ("Armato") ("Board-2"). Defendant-Board maintains a business address at Palmer Township Municipal Building, 3 Weller Place, Easton, PA 18045.

## FACTS

7. Plaintiff is the legal owner of a tract of land located within the geographic boundaries of Defendant-Township, containing 36.634 acres, more or less, being comprised of Northampton County Tax Parcel ID Nos. K8-10A1-0324 and K8-10A1-0418 (the "Property").

8. The Property is located in the PI/Planned Industrial/Commercial district (the "PI/C District") under the provisions of the Zoning Ordinance of Palmer Township (the "Zoning Ordinance").

9. Abraham Atiyeh ("Mr. Atiyeh"), a principal of Plaintiff and Plaintiff's primary manager, is well known to Defendant-Board, inclusive of Board-1 and Board-2, and Defendant-Township's employees, officials, and other agents, having developed properties and/or proposed developments on properties located within the geographic boundaries of Defendant-Township, including several proposed developments on the Property.

10. Mr. Atiyeh routinely appears before Defendant-Board, inclusive of Board-1 and Board-2, and before other public and municipal boards, commissions, and agencies of Defendant-Township and of other municipalities in Eastern Pennsylvania.

11. Charles Bruno, Esquire ("Bruno") was, at all times relevant to this action, Defendant-Township's solicitor, more specifically, from on or about January 1, 2021, until on or about December 31, 2022.

12. Defendant-Board and Defendant-Township's employees, officials, and other agents are, and were at all times relevant to this action, well aware that Mr. Atiyeh is a principal and the primary manager of Plaintiff.

13. Mr. Atiyeh is of Syrian descent.

14. On March 31, 2021, Plaintiff submitted an application for a conditional use proposing to develop the Property for two distribution centers (the "Conditional Use Application"). A "distribution center" is permitted as a conditional use in the PI/C district under Article XIII, Section 190-125.G. of the Zoning Ordinance.

15. Defendant-Township initially refused to accept the Conditional Use Application without justification, and Defendant-Township only accepted the Conditional Use Application after Plaintiff, by and through counsel, argued that Defendant-Township lacked the legal authority to refuse to accept the Conditional Use Application.

16. Upon information and belief, formed from information provided by one or more of those in attendance, in October of 2021 Board-1 met in a closed executive session, in which Bruno, Robert Williams, Manager of Defendant-Township ("Williams"), and

Brenda DiGiralamo, Assistant Manager of Defendant-Township ("DiGiralamo") were present (hereinafter the "Closed Session").

17. Upon information and belief, formed from information by one or more of those in attendance at the Closed Session, the purpose of the Closed Session was to discuss a proposed modification to a settlement agreement of litigation between Exchange 3, LLC and Defendant-Township regarding a property located at 530 Milford Street in Palmer Township, Pennsylvania owned by Exchange 3, LLC.

18. Mr. Atiyeh, a principal of Plaintiff and Plaintiff's primary manager, is also a principal of Exchange 3, LLC and the primary manager of Exchange 3, LLC, which, upon information and belief, was known to Defendant-Township and Board-1.

19. Upon information and belief, formed from information by one or more of those in attendance at the Closed Session, during the discussion regarding Exchange 3, LLC, which took place in the Closed Session, Bruno, referring to Mr. Atiyeh, asked all individuals in attendance at the Closed Session: "why are we negotiating with a terrorist?"

20. Upon information and belief, Defendant-Board developed a scheme to prevent the approval of the Conditional Use Application, because of Mr. Atiyeh's Syrian national origin, and the portrayal of Mr. Atiyeh as a "terrorist".

21. In or about May of 2022, Plaintiff was presented with a Letter of Intent from a national logistics company (the "Prospective Purchaser") to purchase the Property from Plaintiff for $16,000,000.00.

22. The Letter of Intent was contingent upon, *inter alia*, Plaintiff receiving the approval of the Conditional Use Application.

23. Defendant-Board held four (4) public hearings on the Conditional Use Application.

24. At one public hearing that took place on June 26, 2022, Mitchell, a member of both Board-1 and Board-2 publicly asserted that Plaintiff and Mr. Atiyeh "could be building bombs in that building," referring to the proposed distribution center proposed in the Conditional Use Application, with absolutely no evidence in the record to support such an outrageous and offensive accusation (the "Bomb Comment").

25. Following the conclusion of the public hearings on the Conditional Use Application, Defendant-Board issued a decision dated November 10, 2022, denying the Conditional Use Application.

26. A primary reason cited by Defendant-Board in denying the Conditional Use Application was that Plaintiff had not yet identified the entity that would operate the distribution center.  In other words, the distribution center was being proposed on speculation without an end user.

27. Nothing in the Zoning Ordinance of Defendant-Township, nor in any other ordinances of Defendant-Township, required Plaintiff to identify the end user of Plaintiff's proposed distribution center.

28. Plaintiff believes, and therefore avers, that millions of square feet of distribution center space have been developed within the geographic boundaries of Defendant-Township on speculation without an end user identified, more specifically, but not limited to, the following:

(a) The 358,875 square feet distribution center development in 2008 by Exteter Property Group at 2320 Newlin Mills Road, Easton, Pennsylvania 18045, which is located within the geographic boundaries of Defendant-Township

(b) The 281,473 square feet distribution center development in 2012 by Exteter Property Group at 2251 Newlin Mills Road, Easton, Pennsylvania 18045, which is located within the geographic boundaries of Defendant-Township.

(c) The 425,000 square feet distribution center development in 2015 by Prologis at 1520 Van Buren Road, Easton, Pennsylvania, which is located within the geographic boundaries of Defendant-Township.

(d) The 1,104,000 square feet distribution center development in 2015 by Duke Realty at 1610 Van Buren Road, Easton, Pennsylvania, which is located within the geographic boundaries of Defendant-Township.

(e) The 242,620 square feet distribution center development in 2017 by IDI Logistics at 1540 Van Buren Road, Easton, Pennsylvania, which is located within the geographic boundaries of Defendant-Township.

(f) The 1,015,740 square feet distribution center development in 2017 by Duke Realty at 1620 Van Buren Road, Easton, Pennsylvania, which is located within the geographic boundaries of Defendant-Township.

(g) The 628,475 square feet distribution center development in 2017 by Duke Realty at 1611 Van Buren Road, Easton, Pennsylvania, which

is located within the geographic boundaries of Defendant-Township. In a September 6, 2017 news article and after the construction of 1611 Van Buren Road, Easton, Pennsylvania, news article was published in which Duke Realty announced "it ha[d] leased . . . [the] warehouse in Palmer Township, Pa, to a tenant it would only described as a "leading national third-party logistics company," referring to the end-tenant only as a "mystery tenant," which was later identified as XPO Logistics. See "XPO Logistics to Lease Pennsylvania Warehouse 'as Part of its Continued Growth.'" *The Morning Call* (September 6, 2017).

(h) The 182,000 square feet distribution center development in 2017 by Blackstone Real Estate at 2300 Newlins Mill Road, Easton, Pennsylvania 18045, which is located within the geographic boundaries of Defendant-Township.

(i) The 252,232 square feet distribution center development in 2019 by Carson Companies at 2505 Hollow Road, Easton, Pennsylvania 18045, which is located within the geographic boundaries of Defendant-Township.

(j) The 141,384 square feet distribution center development in 2019 by Carson Companies at 4 McFadden Road, Easton, Pennsylvania 18045, which is located within the geographic boundaries of Defendant-Township.

(k)  The 197,181 square feet distribution center development in 2020 by Carson Companies at 5 McFadden Road, Easton, Pennsylvania 18045, which is located within the geographic boundaries of Defendant-Township.

(l)  The 67,005 square feet distribution center development in 2021 by Werner Industries at 2215 Newlins Mill Road, Easton, Pennsylvania 18045, which is located within the geographic boundaries of Defendant-Township.

(m)  The 337,700 square feet distribution center development in 2021 by Carson Companies of 1000 Carson Court, Easton, Pennsylvania 18045, which is located within the geographic boundaries of Defendant-Township.

(n)  The 239,760 square feet distribution center development in 2021 by Carson Companies of 2325 Newlins Mill Road, Easton, Pennsylvania 18045, which is located within the geographic boundaries of Defendant-Township.

(o)  The 160,336 square feet distribution center development in 2021 by Carson Companies of 2345 Newlins Mill Road, Easton, Pennsylvania 18045, which is located within the geographic boundaries of Defendant-Township.

(p)  The December 5, 2022 approval by Defendant-Board for the construction of two distribution warehouses totaling 650,000 square

feet by MRP Industrial at the corner of Van Buren Road and Main Street, Easton, Pennsylvania 18045, which is located within the geographic boundaries of Defendant-Township.

29. Defendant-Township boasts in the *Palmer Township North End Industrial Development Report* (the "Report") released in March of 2022 that "[o]ver the last 10+ years Palmer Township has experienced unprecedent industrial growth…and the demand for developable land continues." Further, according to the Report, "[s]ince 2008, there have been 17 large-scale industrial buildings constructed on 16 properties" in only the northern end of Palmer Township, with "square footage of these 17 buildings [totaling] 6,013,552."

30. The Report continues in asserting that the buildings described in Paragraph 28, *supra*, did not all have end-tenants identified and, as of the date of the Report, there remained 480,770 square feet of the buildings described in Paragraph 28 and Paragraph 29, *supra*, as unoccupied with an end-tenant.

31. Plaintiff filed an appeal with the Court of Common Pleas of Northampton County, Commonwealth of Pennsylvania, of Defendant-Board's denial of the Conditional Use Application (the "Land Use Appeal-1").

32. Included among the allegations raised in the Land Use Appeal-1 is the allegation that Defendant-Board denied the Conditional Use Application in bad faith, with a specific reference made in the Land Use Appeal-1 filings to the Bomb Comment.

33. The Land Use Appeal-1 remains pending.

34. The Letter of Intent to sell the Property to the Prospective Purchaser was terminated due to the denial of the Conditional Use Application by Defendant-Township

and Defendant-Board, which prevented the sale of the Property to the Prospective Purchaser.

35. Subsequent to Defendant-Board's denial of the Conditional Use Application and during the pendency of the Land Use Appeal-1, Plaintiff filed other applications for permitted uses on the Property including an application for a conditional use proposing to develop a "trucking terminal" on the Property (the "Trucking Terminal Application") and an application to place a billboard on the Property (the "Billboard Application").

36. Defendant-Board denied the Trucking Terminal Application.

37. Plaintiff filed an appeal with the Court of Common Pleas of Northampton County, Commonwealth of Pennsylvania, of Defendant-Board's denial of the Trucking Terminal Application (the "Land Use Appeal-2"). The Land Use Appeal-2 remains pending.

38. Defendant-Board conditionally "approved" the Billboard Application conditioned on wholly unreasonable requirements.

39. Plaintiff filed an appeal with the Court of Common Pleas of Northampton County, Commonwealth of Pennsylvania, of Defendant-Board's decision on the Billboard Application, challenging the unreasonable conditions Defendant-Board imposed on Plaintiff (the "Land Use Appeal-3"). The Land Use Appeal-3 remains pending.

40. Since the Closed Session, Defendant-Board has denied applications for use of the Property, and has set forth unreasonable conditions with respect to the Billboard Application, without legal or other justification, thereby blocking Plaintiff's efforts for the reasonable use of the Property.

41. Federal claims involving Pennsylvania land use matters provide that land use appeals do not stay the statute of limitations on any federal claim Plaintiff intends to bring. *Smith v. City of Philadelphia*, 345 F. Supp. 2d 482, 486 (E.D. Pa. 2004).

42. Plaintiff has made good faith efforts to obtain documentary support for the claims raised herein, *i.e.* by filing several requests pursuant to Pennsylvania's Right-To-Know Law, 65 P.S. § 67.101, *et seq.,* to demonstrate that Plaintiff's Conditional Use Application was treated differently than any other similar situated application filed with Defendant-Township. Defendant-Township denied all such requests.

43. Plaintiff files this action to preserve its claims of discrimination raised hereinabove.

## COUNT 1
## PLAINTIFF v. ALL DEFENDANTS
## VIOLATION OF THE DUE PROCESS CLAUSE OF THE
## FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION

44. Plaintiff incorporates paragraphs 1 through 43 above as if fully set forth.

45. Plaintiff's claim is brought under 42 U.S.C. § 1983.

46. Land ownership is a property interest deserving constitutional protections.

47. Defendant-Township and Defendant-Board were, at all times relevant to this action, acting under color of law.

48. Defendant-Township and Defendant-Board developed and continued, at all times relevant to this action, a scheme pursuant to which Defendant-Township and Defendant-Board would not permit Plaintiff to develop the Property because of the Syrian national origin and portrayal as a "terrorist" of Plaintiff's principal and primary manager, Mr. Atiyeh, which is conduct on the part of Defendant-Township and Defendant-Board that

was discriminatory, arbitrary, unreasonable, malicious, improperly motivated, and conscience-shocking.

49. Mitchell, acting under color of law, served to advance the scheme described herein through Mitchell's public, discriminatory, unreasonable, malicious, and conscience-shocking Bomb Comment.

50. The actions of Defendant-Township and Defendant-Board constitute an unlawful discriminatory scheme and policy in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution, both procedurally and substantively.

51. But for the described violations of law, Plaintiff would have been successful in selling the Property to Prospective Purchaser for $16,000,000.00.

52. But for the described violations of law, Plaintiff would have gained significant advertising revenue and profits that would have been available as a result of Plaintiff's Billboard Application.

53. Because of the discriminatory nature of the actions of Defendant-Township and Defendant-Board, Plaintiff has expended substantial time, significant financial resources, and has suffered other harm. Plaintiff's expenses include, but are not limited to, the following:

    (a)    The Conditional Use Application fees;

    (b)    Fees related to the Trucking Terminal Application and the Billboard Application;

    (c)    Engineering fees to prepare site plans;

(d) Consultant fees to pursue approval of the Conditional Use Application, the Trucking Terminal Application, and the Billboard Application;

(e) Consultant fees to respond to the discriminatory handling of the Conditional Use Application, the Trucking Terminal Application, and the Billboard Application by Defendant-Township and Defendant-Board;

(f) Legal fees to pursue approval of the Conditional Use Application, the Trucking Terminal Application, and the Billboard Application;

(g) Legal Fees to respond to the discriminatory handling of the Conditional Use Application, the Trucking Terminal Application, and the Billboard Application by Defendant-Township and Defendant-Board;

(h) Legal fees to prosecute the appeals from the denials of the Conditional Use Application, the Trucking Terminal Application, and the Billboard Application by Defendant-Township and Defendant-Board; and

(i) Costs and expenses to hold the Property, including, but not limited to financing costs, maintenance, and real estate taxes to Defendant-Township and other local, school district, and county agencies and/or authorities.

54. As a result of the discriminatory scheme of Defendant-Township and Defendant-Board, Plaintiff has suffered, now suffers, and will continue to suffer significant harm and economic injury by being denied the opportunity to conduct its business without interference by Defendant-Township and Defendant-Board, resulting in substantial loss of profits.

55. As a result of the discriminatory scheme of Defendant-Township and Defendant-Board, Plaintiff has suffered, now suffers, and will continue to suffer, losses as set forth hereinabove.

## COUNT II
## PLAINTIFF vs. ALL DEFENDANTS
## VIOLATION OF THE EQUAL PROTECTION CLAUSES OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION

56. Plaintiff incorporates paragraphs 1 through 55 above as if fully set forth.

57. The actions of Defendant-Township and Defendant-Board hereinbefore described demonstrate a policy, practice, procedure, or custom of intentionally treating Plaintiff in a manner different from others, who are similarly situated.

58. The disparate treatment Plaintiff suffered was not rationally related to any legitimate government interest, but rather was the product of the view of Defendant-Township and Defendant-Board, that Plaintiff's principal and primary manager was a "terrorist."

59. In such treatment of Plaintiff, Defendant-Township and Defendant-Board, deprived Plaintiff of Equal Protection of law afforded to Plaintiff by the Fourteenth Amendment of the United States Constitution.

60. But for the disparate treatment of Plaintiff by Defendant-Township and Defendant-Board, and, as a result of the within described violations of law, Plaintiff would have successfully sold the Property to Prospective Purchaser for $16,000,000.00.

61. But for the described violations of law, Plaintiff would have gained significant advertising revenue and profits that would have been available as a result of Plaintiff's Billboard Application.

62. As a result of the within described violations of law, Defendant-Township and Defendant-Board proximately caused damages to Plaintiff, including, but not limited to:

    (a)    The Conditional Use Application fees;

    (b)    Fees related to the Trucking Terminal Application and the Billboard Application;

    (c)    Engineering fees to prepare site plans;

    (d)    Consultant fees to pursue approval of the Conditional Use Application, the Trucking Terminal Application, and the Billboard Application;

    (e)    Consultant fees to respond to the discriminatory handling of the Conditional Use Application, the Trucking Terminal Application, and the Billboard Application by Defendant-Township and Defendant-Board;

    (f)    Legal fees to pursue approval of the Conditional Use Application, the Trucking Terminal Application, and the Billboard Application;

(g) Legal Fees to respond to the discriminatory handling of the Conditional Use Application, the Trucking Terminal Application, and the Billboard Application by Defendant-Township and Defendant-Board;

(h) Legal fees to prosecute the appeals from the denials of the Conditional Use Application, the Trucking Terminal Application, and the Billboard Application by Defendant-Township and Defendant-Board; and

(i) Costs and expenses to hold the Property, including, but not limited to financing costs, maintenance, and real estate taxes to Defendant-Township and other local, school district, and county agencies and/or authorities.

63. As a result of the within described violations of law by Defendant-Township and Defendant-Board, Plaintiff has suffered, now suffers, and will continue to suffere significant harm and economic injury by being denied the opportunity to conduct its business without interference by Defendant-Township and Defendant-Board, resulting in substantial loss of profits.

64. As a result of the herein described violations of law by Defendant-Township and Defendant-Board, Plaintiff has suffered, now suffers, and will continue to suffer, losses as set forth hereinabove.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Exchange 12, LLC, requests that the Court enter a judgment against Defendant-Township and Defendant-Board, and grant Plaintiff the following relief:

(a) Declare that the actions of Defendant-Township and Defendant-Board, as described hereinabove violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution as well as 42 U.S.C. § 1983;

(b) Issue a permanent injunction against Defendant-Township and Defendant-Board that enjoins Defendant-Township and Defendant-Board from continuing to violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment of United States Constitution as well as 42 U.S.C. § 1983;

(c) Award damages for lost profits and other harm suffered as a result of the discriminatory practices of Defendant-Township and Defendant-Board, including but not limited to:

  (i) Filing fees paid for the Conditional Use Application, the Trucking Terminal Application, and the Billboard Application;

  (ii) Engineering fees to prepare site plans for the Property;

  (iii) Consultant fees to pursue the approval of the Conditional Use Application, the Trucking Terminal Application, and the Billboard Application;


(iv) Consultant fees to respond to the discriminatory handling of the Conditional Use Application, the Trucking Terminal Application, and the Billboard Application by Defendant-Township and Defendant-Board;

(v) Legal fees to pursue approval of the Conditional Use Application, the Trucking Terminal Application, and the Billboard Application;

(vi) Legal Fees to respond to the discriminatory handling of the Conditional Use Application, the Trucking Terminal Application, and the Billboard Application by Defendant-Township and Defendant-Board;

(vii) Legal fees to prosecute the appeals from the denials of the Conditional Use Application, the Trucking Terminal Application, and the Billboard Application by Defendant-Township and Defendant-Board; and

(viii) Costs and expenses to hold the Property, including, but not limited to financing costs, maintenance, and real estate taxes to Defendant-Township and other local, school district, and county agencies and/or authorities.

(d) Award Plaintiff reasonable attorneys' fees and costs; and

(e) Award such other and further relief as this Court deems just and appropriate.

## **JURY TRIAL DEMANDED**

Plaintiff, Exchange 12, LLC, respectfully requests a trial by jury.

Respectfully Submitted:

**NORRIS McLAUGHLIN, P.A.**

September 26, 2023                By:    /s/ John Alexander Short
                                         John Alexander Short, Esquire


September 26, 2023                By:    /s/ Raymond G. Lahoud
                                         Raymond G. Lahoud, Esquire*
                                             * *Pro Hac Vice* forthcoming


**EASTBURN AND GRAY, P.C.**

September 26, 2023                By:    /s/ John A. VanLuvanee
                                         John A. VanLuvanee

                                         *Attorneys for Plaintiff, Exchange 12, LLC*