## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| Exchange 12, LLC, | : | |
| | : | No. 5:23-cv-03740-EGS |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| | : | Honorable Jeffrey L. Schmehl, J. |
| Palmer Township, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR DISQUALIFICATION OF COUNSEL AND FOR SANCTIONS

*AND NOW*, come Defendants, Palmer Township and the Board of Supervisors of Palmer Township (hereinafter collectively "Defendants" of "the Township"), by and through their undersigned counsel, and submit this Memorandum of Law in Support of Defendants' Motion for Disqualification of Counsel and for Sanctions.

## I.    Introduction and Procedural Background

Plaintiff initiated this action on September 26, 2023, asserting claims for deprivation of substantive due process and equal protection under the Fourteenth Amendment to the United States Constitution.  Plaintiff's Complaint relates to three (3) decisions by the Township regarding land-use applications submitted by Plaintiff for property within the Township.  Each of those decisions was appealed to the Northampton County Court of Common Pleas, and each of those cases remains pending in state court.  On September 28, 2023, attorney Raymond Gabriel Lahoud, Esquire, filed an application for admission *pro hac vice* before this court.  In that application, attorney Lahoud

certified that, "*I will demean myself as an attorney of this court uprightly and according to law...*"[1]

Attorney Lahoud also indicated that he was admitted to practice in the State of New York, but not in the Commonwealth of Pennsylvania.  That application was granted on October 2, 2023.[2]

In the original Complaint, Plaintiff includes several allegations relating to comments allegedly made by a former Township solicitor during an executive session to discuss resolution of a prior lawsuit brought by Plaintiff.  On October 11, 2023, Defendants filed a Motion to Strike certain allegations of Plaintiff's Complaint on the grounds that they referenced communications that were protected by the attorney-client privilege and that the privilege had not been waived by the Township.  From this point forward, Defendants have been clear and unequivocal that they are asserting privilege with regard to any and all communications with the Township Solicitor(s) during executive sessions and other private communications.   This privilege belongs to the Township and has never been waived.  On October 11, 2023, Defendants also moved to dismiss Plaintiff's Complaint pursuant to FED. R. CIV. P. 12(b)(6).  Plaintiff failed to file a timely response to either of those motions.  On October 30, 2023, several days after the deadlines to respond to the pending motions had expired, Defendants' counsel wrote to the Honorable Edward G. Smith, and requested that the motions be granted as unopposed.   Plaintiff's counsel never provided an explanation as to why they had failed to respond to the motions in a timely manner.

On October 30, 2023, Plaintiff filed an Amended Complaint.  The Amended Complaint also included reference to alleged comments made during an executive session.  On October 31, 2023, Defendants filed a new Motion to Strike, once again asserting the attorney-client privilege.

---

[1] Docket Item. No. 7 (*emphasis in original*).
[2] Docket Item No. 8.

#11726179v1

That motion remains pending before the Court.  As such, there has never been any determination that the Township has waived its attorney-client privilege.

On January 18, 2024, Plaintiff's counsel indicated an intent to take the depositions of two (2) former Township Supervisors, and well as two (2) current Township officials.  On the same day, counsel for Defendants inquired of Plaintiff's counsel whether he intended "to inquire about any communications that took place during executive sessions or other meetings with counsel, or to the extent that you intend to question any current or former Supervisor regarding legislative decisions."  Upon receiving no response to this inquiry, Defendants' counsel followed up on January 29, 2024, and again on January 30, 2024.  Finally, on January 30, 2024, Plaintiff's counsel indicated that he intends to question these individuals with regard to the attorney-client privileged communications that are the subject of the pending motion to strike.

On January 31, 2024, Defendants filed a Motion for Protective Order to preclude Plaintiff from engaging in questioning during depositions in an attempt to solicit witnesses to violate the attorney-client privilege that belongs to the Township.  Once again, Defendants made it clear that the Township asserted that the attorney-client privilege protected all communications between Township officials and the Township Solicitor during private communications.  Plaintiff failed to file a timely response to that Motion, failed to request additional time to respond, and failed to request relief from the Court for its failure to respond in a timely manner.

On February 16, 2024, counsel for Defendants contacted the Court regarding Plaintiff's failure to respond to the Motion for Protective Order.  Subsequently, Plaintiff attempted to respond to the Motion for Protective Order without seeking leave of Court to file an untimely response. On February 20, 2024, the Court granted the Motion for Protective Order as unopposed.

On February 20, 2024, counsel for Defendant was notified about attempts by Plaintiff and/or his counsel to further violate the attorney-client privilege that had been asserted by Defendants on October 16, 2024.  Defendants' counsel received an email from counsel for Anne-Marie Panella, a former Township Supervisor, stating, "I spoke to Anne Marie Panella and she indicated to me that she believes she heard from Mr. Atiyeh in December 2023 by telephone.  The conversation was to the effect that she will likely be called upon to testify about what took place in the Executive session and what was said by whom."[3]   At the time of this conversation, Defendants had clearly and unambiguously asserted that the Township did not waive the attorney-client privilege with regard to communications between the Township Supervisors and the Township Solicitor.

On February 21, 2024, Plaintiff's counsel produced an affidavit from David E. Colver, another former Township Supervisor.  The affidavit purports to attest to statements made by the former Township Solicitor in an executive discussion to discuss resolution of a prior lawsuit brought by Plaintiff.  That affidavit was signed on February 17, 2024, during the period in which both Defendants' Motion to Strike and Motion for Protective Order were pending.  Also on February 21, 2024, Plaintiff's counsel filed a Motion for Relief from the Court's February 20, 2024, Order.  Plaintiff's counsel attached a copy of Mr. Colver's affidavit to that motion, arguing:

> Plaintiff avers it would suffer great prejudice if this Court does not grant this Motion because it obtained on February 17, 2024, a subscribed and sworn affidavit by former Township Supervisor David Colver stating Charles Bruno referred to Mr. Abraham Atiyeh, a principal and sole manager of Plaintiff as a "terrorist."[4]

Plaintiff's counsel further argued:

---

[3] February 20, 2024, Email, attached hereto as Exhibit "A".

[4] Docket Item No. 41, at ¶ 9.

#11726179v1

Moreover, on February 17, 2024, a critical development unfolded when Plaintiff obtained a legally binding affidavit from David Colver, a former member of the Board.  In this document, Colver asserts that Charles Bruno who is a deeply intertwined individual to this action, derogatorily referred to Plaintiff's principal and sole manager, Mr. Abraham Atiyeh, as a "terrorist." It is imperative for the integrity of this legal process that the Plaintiff is granted the opportunity to rigorously examine the truthfulness of Colver's serious accusations.[5]

The communication alleged in the affidavit produced by Plaintiff's counsel references the precise discussion that was the very subject of the pending Motion for Protective Order – a motion that since has been granted.

Despite clear and unambiguous assertions by the Township that these communications were subject to the attorney-client privilege, and despite the fact that two (2) motions addressing this privilege remained pending before the Court, Plaintiff and his counsel chose to continue to violate the Township's attorney-client privilege through communications with individuals who lacked any authority to waive the privilege.  Plaintiff and his counsel failed to inform these individuals that the Township had asserted the attorney-client privilege and that multiple motions remained pending addressing this privilege.  As this conduct is a clear and unambiguous violation of the Pennsylvania Rules of Professional Conduct, and because Plaintiff and its counsel have demonstrated a clear intent to ignore the Court's authority to rule on the matter of privilege, Plaintiff's counsel must be disqualified from further representation in this matter, sanctions must be entered against Plaintiff, and Plaintiff's counsel should be referred to the Disciplinary Board for appropriate sanctions.

---

[5] Docket Item No. 41-1, at p.7.

- 5 -

#11726179v1

## II.   <u>Legal Argument</u>

### a.   *The Court Has the Authority to Disqualify Plaintiff's Counsel*

"Supervision of the professional conduct of attorneys practicing in a federal court is a matter of federal law."  *U.S. v. Miller*, 624 F.2d 1198, 120 (3rd Cir. 1980).  The Third Circuit has explained:

> The district court's power to disqualify an attorney derives from its inherent authority to supervise the professional conduct of attorneys appearing before it.  As a general rule, the exercise of this authority is committed to the sound discretion of the district court and will be overturned on appeal only for an abuse of this discretion.
>
> This general rule is subject to one major exception.  We have not confined our review to the abuse of discretion standard on issues of whether an ABA disciplinary rule prohibits certain professional conduct.  Such issues leave little leeway for the exercise of discretion.  We have approached these issues as questions of law subject to plenary review.

*Id.* at 1201 (*internal citations and quotation marks omitted*).

> [T]he court should disqualify an attorney only when it determines, on the facts of the particular case, that disqualification is an appropriate means of enforcing the applicable disciplinary rule. It should consider the ends that the disciplinary rule is designed to serve and any countervailing policies, such as permitting a litigant to retain the counsel of his choice and enabling attorneys to practice without excessive restrictions.

*Ibid.*  In this matter, the violation of multiple provisions of the Pennsylvania Rules of Professional Conduct warrants the disqualification of Plaintiff's counsel.

### b.   *Plaintiff's Counsel Have Violated Rules 3.5(d) and 4.2 of the Pennsylvania Rules of Professional Conduct*

By contacting multiple former Township supervisors and soliciting them to violate the Township's attorney-client privilege ***after*** multiple motions were filed asserting this privilege,

- 6 -

including a motion for protective order, Plaintiff's counsel committed clear violations of the Rules of Professional Conduct.

Pursuant to Pennsylvania Rule of Professional Conduct 4.2, "In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order."  Pursuant to Comment 7 to Rule 4.2, "In communicating with a current or former constituent of an organization, a lawyer must not use methods of obtaining evidence that violate the legal rights of the organization."  In this case, the Township has clearly, repeatedly, and unequivocally asserted that any and all communications between the Board of Supervisors, Township Manager, and Township Solicitor are subject to the attorney-client privilege, and that the Township has not waived this privilege.  Defendants asserted this privilege first on October 11, 2023, and have never waivered from that position.

"The attorney -client privilege is one of the oldest and most important privileges.  The purpose is to foster a confidence between an attorney and client that will lead to a trusting and open dialogue."  *Roberts Technology Group, Inc. v. Curwood, Inc.*, 2015 WL 4503547, *1 (E.D. Pa. July 20, 2015) (*internal citations and quotation marks omitted*).  As the Supreme Court has made clear:

> The attorney–client privilege is the oldest of the privileges for confidential communications known to the common law.  Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.  The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.  As we stated last Term in *Trammel v. United States*, 445 U.S. 40, 51, 100 S.Ct. 906, 913, 63 L.Ed.2d 186 (1980): "The lawyer–client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional

- 7 -

> mission is to be carried out." And in *Fisher v. United States*, 425
> U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976), we
> recognized the purpose of the privilege to be "to encourage clients
> to make full disclosure to their attorneys." This rationale for the
> privilege has long been recognized by the Court, *see Hunt v.
> Blackburn*, 128 U.S. 464, 470, 9 S.Ct. 125, 127, 32 L.Ed. 488 (1888)
> (privilege "is founded upon the necessity, in the interest and
> administration of justice, of the aid of persons having knowledge of
> the law and skilled in its practice, which assistance can only be
> safely and readily availed of when free from the consequences or the
> apprehension of disclosure"). Admittedly complications in the
> application of the privilege arise when the client is a corporation,
> which in theory is an artificial creature of the law, and not an
> individual; but this Court has assumed that the privilege applies
> when the client is a corporation.

*Upjohn Co. v. U.S.*, 449 U.S. 390 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). Courts in Pennsylvania have held that even an admission of murder made to an attorney with whom there was an existing professional relationship was protected from disclosure by the attorney-client privilege. *See Commonwealth of Pennsylvania v. Mrozek*, 657 A.2d 997, 998-99 (Pa. Super. Ct. 1995).

As has been briefed previously in this case, Plaintiff and his counsel have repeatedly violated (and attempted to violate) the Township's attorney-client privilege by soliciting information from ***former*** Township officials. These individuals have absolutely no right or authority to waive the privilege on behalf of the Township. Despite this, and despite the fact that multiple motions remain pending before the Court asking for confirmation that this privilege remains intact, Plaintiff and his counsel have engaged in multiple communications whom they know to be subject to the privilege, and have asked that they violate that privilege to the detriment of the Township. This conduct clearly and undisputedly violates the clear language of Comment 7 to Rule 4.2. The instant that the privilege was asserted, Plaintiff's counsel had an obligation both to cease ***any*** communications with current or former Township officials regarding privileged

communications, and to instruct their client that it was also prohibited from doing so while the motions remained pending.

Instead, here, Plaintiff's counsel decided to continue to use their client to contact former Township officials in an attempt to violate the Township's privilege. In December 2023, Plaintiff and its counsel reached out to Ms. Panella and attempted to obtain privileged information from her. Subsequently, while a Motion for Protective Order was pending, Plaintiff and its counsel contacted another former Township official, Mr. Colver, and solicited an affidavit regarding the precise subject matter of the pending motion. Plaintiff's counsel then publicly filed this affidavit, claiming that it provided a basis to further violate the Township's privilege. This is inexcusable.

Further, counsel's glib and dismissive attitude concerning the attorney-client privilege further underlies their complete failure to grasp the Rules of Professional Conduct. In the untimely response to Defendants' Motion for Protective Order, Plaintiff's counsel wrote:

> The Defendants audaciously claim that Bruno's terroristic comment falls under the cloak of attorney-client privilege – a flagrant and baseless assertion. Assuming arguendo, that the attorney-client privilege should be considered, Defendants are wrong. The audacity of such a claim is astounding. It's as if they have adopted the tyrannical arrogance of Maximilien Robespierre himself, assuming they can besmirch Mr. Atiyeh, a respected Syrian-American and principal of the Plaintiff, with impunity. Defendants' stance reeks of imperial hubris, positioning Defendant as untouchable overlords, convinced Defendants have the unfettered right to belittle and insult the integrity of every diligent Syrian-American residing in the Lehigh Valley. How dare they.

These comments demonstrate that Plaintiff's counsel has decided that they have no respect for the Court's authority or the Rules of Professional Conduct. It is at the heart of the attorney-client privilege, as recognized by the United States Supreme Court, that all communications between an attorney and client regarding the subject matter of the representation, are protected from disclosure. Plaintiff's counsel has unilaterally decided that they think this rule does not apply to them because

they think the information that they have obtained through underhanded, deceitful, and unethical means is helpful to their case.  This would be the case in any criminal or civil proceeding, and does not provide an exception to the privilege.  Further, Plaintiff's counsel's attitude regarding this issue makes it clear that they intend to continue to violate the rights of the Township, and cannot be permitted to remain as counsel in this case.[6]

The actions of Plaintiff's counsel also violate the terms of Pennsylvania Rule of Professional Conduct 3.5(d), which states, "a lawyer shall not … engage in conduct intended to disrupt a tribunal."  In this case, multiple motions have been filed asking that the Court address the question of the attorney-client privilege, including to preclude Plaintiff's counsel for asking current or former Township officials regarding communications that took place with the Township Solicitor.  Defendants' counsel informed Plaintiff's counsel that the question of privilege would have to be addressed by the Court before any depositions of these individuals could take place.  In the face of this motion, Plaintiff and its counsel sought to suborn these officials to violate the privilege and to undermine the authority of the Court to manage discovery.  In brazenly demonstrating that they do not, and will not, respect the Court's authority, counsel have shown their lack of fitness to practice before this Court.

### c. To the Extent that Plaintiff was Involved in this Scheme, Plaintiff's Amended Complaint Should be Dismissed as a Sanction

To the extent that Plaintiff's counsel involved Plaintiff in its plan to violate Defendants' attorney-client privilege, then all claims should be dismissed as a sanction.

Pursuant to FED. R. CIV. P. 41(b), "If the plaintiff fails … to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it."  The Third Circuit

---

[6] That Mr. Lahoud has engaged in this conduct while admitted *pro hac vice* is especially troubling.

- 10 -

#11726179v1

applies the factors set forth in *Poulis v. State Farm Fire and Casualty Co.*, 747 F.2d 863 (3rd Cir.

1984), when determining whether sanctions are appropriate under Rule 41(b). *See Hildebrand v.*

*Allegheny County*, 923 F.3d 128, 132 (3rd Cir. 2019). Those factors are:

> (1) the extent of the party's personal responsibility; (2) the prejudice
> to the adversary caused by the failure to meet scheduling orders and
> respond to discovery; (3) a history of dilatoriness; (4) whether the
> conduct of the party or the attorney was willful or in bad faith; (5)
> the effectiveness of sanctions other than dismissal, which entails an
> analysis of alternative sanctions; and (6) the meritoriousness of the
> claim or defense.

*Poulis*, at 868. "None of the *Poulis* factors is alone dispositive, and it is also true that not all of

the factors need to be satisfied to justify dismissal of a complaint for lack of prosecution."

*Hildebrand*, at 13. "Dismissal is a sanction rightfully in the district courts' toolbox…" *Ibid.* In

this case, if Plaintiff was involved directly, the factors weigh heavily in favor of dismissal.

Initially, as it is clear that Mr. Atiyeh himself was involved in contacting the former

Township officials after the Motion to Strike was filed, there can be no dispute that the personal

responsibility factor is met. Second, there has been extreme prejudice to Defendants by virtue of

the conduct of Plaintiff and his attorneys. Defendants have had to file multiple motions to protect

information that should have been off-limits as a matter of law. Further, Defendants have had to

address media reports generated as a direct result of Plaintiff and its counsel publishing

information that they never should have obtained. Third, there is a history of this conduct. Mr.

Atiyeh contacted Ms. Panella in December. In January 2024, Defendants filed a Motion for

Protective Order. Despite this, Plaintiff and/or his counsel subsequently contacted Mr. Colver to

solicit an affidavit regarding the exact communications that were the subject of that motion.

Fourth, the complete refusal to abide by the Court's authority by waiting for decisions on the

pending motions demonstrates willfulness and bad faith. Fifth, as Plaintiff and its counsel have

#11726179v1

obtained information about which they had no right to inquire, and because they have repeatedly attempted to use that stolen information to their advantage, the only sanction other than dismissal that would be appropriate would be to finally and conclusively preclude any discovery into or reference to any statement allegedly made by Solicitor Bruno during privileged communications.

Finally, as set forth in the pending Motion to Dismiss, Defendants have ironclad defenses to Plaintiff's claims. As set forth in the pending motion, Defendants denied Plaintiff's application for a distribution center because Plaintiff refused to identify the final use of the property, as permitted by *Mushroom Hill, LLC v. Swatara Township Board of Commissioners*, 276 A.3d 1216 (2022). As Plaintiff and his counsel are well-aware, Defendants have applied this same standard to other development projects, and the Northampton County Court of Common Pleas has agreed with these decisions. For example, on January 9, 2024, the Northampton County Court of Common Pleas denied an appeal from Greystone Capital Inc., ruling that, "Appellant Greystone Capital Inc. did not meet its burden of proving otherwise that it's application for conditional use satisfies the requirements for the subject zoning ordinance. Specifically, Appellant failed to adequately identify the end users and type of activity at the proposed property."[7] As Plaintiff and his counsel are aware, the Township also has required another landowner to include the same condition for erection of a digital billboard (an access road) that Plaintiff claims violates his civil rights. The Township also has approved numerous projects submitted by entities associated with Mr. Atiyeh in the past. In short, there is no admissible evidence that Mr. Atiyeh's national origin played any role in the Township's land use decisions in this matter. Accordingly, all *Poulis* factors weigh heavily in favor of dismissal.

---

[7] January 9, 2024, Order, attached hereto as Exhibit "B".

- 12 -

**III.**    <u>**Conclusion**</u>

In light of the foregoing, there can be no dispute that Plaintiff and its counsel have engaged in a scheme to violate the Township's attorney-client privilege while a motion for protective order was pending before the Court.  By doing so, Plaintiff's counsel has committed multiple violations of Pennsylvania Rules of Professional Conduct 3.5 and 4.2, and demonstrated that they are not fit to practice before the Court.  Further to the extent that Plaintiff's principal, Abraham Atiyeh, was directly and personal involved in this scheme, the *Poulis* factors require that Plaintiff's claims be dismissed in their entirety.

Respectfully submitted,

**DEASEY, MAHONEY & VALENTINI, LTD.**

By:    /s/ *Rufus A. Jennings*

Rufus A. Jennings, Esquire
Pa. Attorney Identification No. 93030
1601 Market Street, Suite 3400
Philadelphia, PA 19103
Phone:  (215) 587-9400
Fax:     (215) 587-9456
Email:  rjennings@dmvlawfirm.com

Attorney for Defendants

Date: February 26, 2024

#11726179v1

# Exhibit

# "A"

**Amanda Campbell**

| | |
|---|---|
| **From:** | Steven Molder <sbmolder@molderlaw.com> |
| **Sent:** | Tuesday, February 20, 2024 12:32 PM |
| **To:** | Rufus Jennings |
| **Subject:** | Palmer Township |

I spoke to Anne Marie Panella and she indicated to me that she believes she heard from Mr. Atiyeh in December 2023 by telephone.  The conversation was to the effect that she will likely be called upon to testify about what took place in the Executive session and what was said by whom.  She reached out to the Township Manager who said she was practically in tears and relayed the context of her conversation.   Of course she will absolutely tell the truth if called on to testify.

Any questions don't hesitate to call.

Steven B. Molder, Esquire
904 Lehigh St.
Easton, PA 18042
610-250-9712
610-559-9604 (fax)

# Exhibit "B"



COPY

IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY,
COMMONWEALTH OF PENNSYLVANIA
CIVIL DIVISION

| | | |
|---|---|---|
| APPEAL OF GREYSTONE CAPITAL INC. FROM THE DECISION OF THE PALMER TOWNSHIP BOARD OF SUPERVISORS | : : : : | No. C-48-CV-2023-00629<br><br>Land Use Appeal |
| APPEAL OF GREYSTONE CAPITAL, INC. FROM THE UNDATED DECISION OF THE PALMER TOWNSHIP BOARD OF SUPERVISORS MAILED MARCH 7, 2023 | : : : : : | No. C-48-CV-2023-02037<br><br>Land Use Appeal |

### ORDER

**AND NOW**, this 9th day of January, 2024, upon consideration of Appellant Greystone

Capital Inc.'s Notice of Appeal from the decision of the Board of Supervisors of Palmer Township

issued on March 7, 2023, Appellant's Brief in Support of Land Use Appeal, Brief in Opposition

to the Land Use Appeal filed by the Board of Supervisors of the Township of Palmer, Appellant's

Reply Brief in Support of Land Use Appeal, and after hearing oral arguments by counsel for the

parties on October 11, 2023, it is hereby ORDERED that the appeal is DENIED and the decision

of the Board of Supervisors of the Township of Palmer is AFFIRMED.[1]

BY THE COURT:

SAMUEL P. MURRAY, J.

---

[1] We conclude that the decision of the Board of Supervisors of the Township of Palmer to deny the conditional use application is based on substantial evidence. This standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." EQT Production Company v. Borough of Jefferson Hills, 652 A.3d 1010, At 1025(Pa. 2019). Appellant Greystone Capital Inc. did not meet its burden of proving otherwise that it's application for conditional use satisfies the requirements for the subject zoning ordinance. Specifically, Appellant failed to adequately identify the end users and type of activity at the proposed property. With regard to these two issues, Appellant's evidence was speculative. Furthermore, Appellant failed to show that the proposed facility would comply with the noise control requirements under Section 190-158 of the subject ordinance.