IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EXCHANGE 12, LLC** | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 23-3740 |
| | : | |
| **PALMER TOWNSHIP, BOARD of** | | |
| **SUPERVISORS OF PALMER TOWNSHIP** | : | |

## MEMORANDUM

**SCHMEHL, J.   /s/JLS**                                                                                              **JUNE 10, 2024**

  Plaintiff brought this 42 U.S.C. § 1983 action, claiming the substantive and procedural due process rights of its principal and primary manager, Abraham Atiyeh ("Atiyeh") were denied when the Defendants allegedly developed a scheme to deny Plaintiff the right to develop certain properties in Palmer Township because of Atiyeh's Syrian national origin and his portrayal by the former Palmer Township Solicitor at a closed meeting as a "terrorist" and by a Township Board of Supervisor's remark during a public meeting that Atiyeh could be developing the properties for the purpose of "making bombs." Plaintiff has also asserted a claim for violation of the Equal Protection Clause of the 14th Amendment. Presently before the Court is the Defendants' motion for a protective order. For the reasons that follow, the motion is denied.

  The Amended Complaint alleges that Plaintiff is a Pennsylvania limited liability company. ECF 16 at ¶ 4. Defendant Palmer Township is a township of the second class organized under the laws of the Commonwealth of Pennsylvania. *Id*. at ¶ 5. Defendant

1

the Board of Supervisors of Palmer Township is the governing body of Palmer Township. *Id*. at ¶ 6.[1]

Plaintiff is the legal owner of a tract of land consisting of 36.634 acres in Palmer Township (the "Property"). *Id.* at ¶ 7. Atiyeh is "well known" to the Board, having previously developed properties in Palmer Township. *Id*. at ¶ 9. He "routinely" appears before the Board of Supervisors and other public and municipal boards and commissions in Palmer Township. *Id.* at ¶10. Atiyeh is of Syrian descent. *Id*. at ¶13.

On March 31, 2021, Plaintiff applied for a conditional use (the "Conditional Use Application") proposing to develop the Property for two distribution centers. *Id*. at ¶14. A distribution center is permitted as a conditional use at the Property. *Id*.

In October, 2021, Board-1 held a "meeting outside of the view of the public" (the "Meeting") to discuss a proposed modification to a settlement agreement between a different entity, Exchange 3, LLC, and Palmer Township regarding a property owned by Exchange 3. *Id*. at ¶17. Atiyeh is also the principal and primary manager of Exchange 3. *Id*. at ¶18. In addition to Board-1, the meeting was attended by the former Township Solicitor, Charles Bruno, as well as by the Manager of the Township, Robert Williams, and the Assistant Manager of the Township, Brenda DiGiralamo. *Id*. at ¶16.

The Amended Complaint alleges that "[u]pon information and belief, formed from information by one or more of those in attendance at the Meeting, during the discussion

---

[1] The Amended Complaint alleges that for purposes of this action, the Defendant Board of Supervisors (the "Board") consists of members from January 1, 2021 until December 31, 2021 and from January of 2022 until the commencement of this action. *Id*. at ¶6. According to the Amended Complaint, from on or about January 1, 2021, until December 31, 2021, the Board consisted of David E. Colver ("Colver"), AnnMarie Panella ("Panella"), Jeffrey Young ("Young"), K. Michael Mitchell, and Robert Smith ("Smith") (collectively, "Board-1"). *Id*. From January of 2022 until the commencement of this action the Board consisted of Mitchell, Panella, Young, Michael Brett ("Brett"), and Joseph Armato ("Armato")9collectively, Board-2"). *Id*.

regarding Exchange 3, LLC, which took place at the Meeting, [the former Township Solicitor], referring to Mr. Atiyeh, asked all individuals in attendance at the Meeting: 'Why are we negotiating with a terrorist?'" *Id*. at ¶19. The Amended Complaint alleges that the Board "developed a scheme to prevent the approval of the Conditional Use Application, because of Mr. Atiyeh's Syrian national origin, and the portrayal of Mr. Atiyeh as a '"terrorist."' *Id*. at ¶20.

In May of 2022, Plaintiff received a Letter of Intent from a national logistics company to purchase the Property for $16,000,000. *Id*. at ¶21. However, the Letter of Intent was contingent upon Plaintiff receiving approval of the Conditional Use Application. *Id. at* ¶22. The Board held four public hearings on the Conditional Use Application. *Id*. at ¶23. One of those public hearings took place on June 28, 2022. *Id*. at ¶24. During this meeting, Board of Supervisor Mitchell publicly asserted that Plaintiff and Atiyeh "could be building bombs in that building [the proposed distribution center]." *Id.*

On November 10, 2022, Board-2 denied the Conditional Use Application. *Id.* at ¶25. A primary reason cited by the Board for denying the Application was that Plaintiff refused to identify the end user for the distribution center. *Id.* at ¶26. Plaintiff alleges that Palmer Township's Zoning Ordinance does not require the Plaintiff to identify the end user. *Id.* at ¶27. The Amended Complaint identifies a multitude of distribution centers which Plaintiff believes were permitted to be developed in Palmer Township without first disclosing the identity of an end user. *Id.* at ¶28.

Plaintiff appealed the denial of the Conditional Use Application to the Court of Common Pleas of Northampton County. *Id*. at ¶31. That appeal remains pending. *Id.* at

¶33. Meanwhile the Letter of Intent to purchase the Property from Plaintiff was terminated due to the denial of the Conditional Use Application. *Id*. at ¶34.

Following the denial of the Conditional Use Application, Plaintiff filed other applications to develop the Property as a trucking terminal ("Trucking Termainal Application") and to place a billboard on the Property ("Billboard Application"). *Id*. at ¶35. The Board of Supervisors denied the Trucking Terminal Application. *Id*. at ¶36. Plaintiff appealed to the Court of Common Pleas of Northampton County. *Id*. at ¶37. That appeal remains pending. *Id*.

The Board did conditionally approve the Billboard Application subject to what Plaintiff terms as "wholly unreasonable requirements." *Id*. at ¶38. Plaintiff appealed to the Court of Common Pleas of Northampton County. *Id*. at ¶39. That appeal also remains pending. *Id*.

The Defendants have filed a motion for a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, seeking to prevent any current or former Township Supervisor or official from disclosing any privileged communication during a deposition in this matter. Specifically, Defendants argue the following:

> Plaintiff has alleged that, during a closed executive session with the Township solicitor in the context of a discussion regarding the settlement of pending litigation, the former Township solicitor made a comment about Plaintiff. This discussion is quintessentially the type that is protected by the attorney-client privilege. It was conducted between an attorney and Township officials; it was directly related to the provision of legal services in pending litigation; and it was closed to the public, demonstrating an intent to maintain the attorney-client privilege. As such, there can be no dispute that the alleged statement was made in the context of a privileged communication.

ECF 37-2 at 4.

> The attorney-client privilege applies where:
>
> > (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his or her subordinate, and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and (d) not for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Rhone–Poulenc Rorer Inc. v. Home Indem. Co.,* 32 F.3d 851, 862 (3d Cir.1994). "The privilege covers communications made by the client as well as the attorney and it 'exists to protect not the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice.'" *Lawless v. Del. River Port. Auth.*, 2013 WL 180347, at *1 (E.D. Pa. Jan. 16, 2013) (quoting *Upjohn Company v. United States*, 449 U.S. 383, 390 (1981)). The privilege belongs to the client and only the client may waive it. *Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 90 (3d Cir. 1992).

In addition, "[b]ecause the attorney-client privilege obstructs the truth-finding process, it is construed narrowly." *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1423 (3d Cir. 1991). The application of the privilege must be determined on a "case-by-case" basis, *Upjohn*, 449 U.S. at 396–97, and it "protects *only* those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege," *Westinghouse,* 951 F.2d at 1423–24 (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)) (emphasis in original).

Under the Pennsylvania Second-Class Township Code (the "Code"), townships are "governed and supervised by boards of supervisors" which "consist of three members or, if approved by the electors under section 402(b), five members." 53 P.S. § 65601. The board of supervisors is "charged with the general governance of the township and the execution of legislative, executive and administrative powers in order to ensure sound fiscal management and to secure the health, safety and welfare of the citizens of the township." 53 P.S. § 65602.

Under the Code, the board of supervisors may appoint a township solicitor who serves at the pleasure of the board of supervisors. 53 P.S. § 66101. The township solicitor directs and controls the legal matters of the township. 53 P.S. § 66102. The township solicitor also is responsible for commencing and prosecuting all actions brought by the township" as well as defending the township or any township officer against all actions or suits brought against the township or township officer. The township solicitor is also tasked with performing every professional act incident to the office which the township solicitor may be authorized or required to do by the board of supervisors or by any resolution. Finally, the township solicitor also furnishes the board of supervisors, upon request, with an opinion in writing upon any question of law. 53 P.S. § 66103.

"A quorum is two members of a three-member board of supervisors or three members of a five-member board of supervisors. An affirmative vote of a majority of the entire board of supervisors at a public meeting is necessary in order to transact any business." 53 P.S. § 65603.

The board of supervisors may schedule special meetings of the board of supervisors after notice required by the "Sunshine Act." 53 P.S. 65604. "Notice of a special meeting shall state the nature of the business to be conducted at the meeting." *Id*.

The Court finds that while the contents of any discussions at the Meeting between the former Township Solicitor and his client, the Board of Supervisors, concerning a proposed amendment to a settlement with the Plaintiff in another matter are clearly protected by the attorney-client privilege, the alleged reference to Plaintiff as a terrorist by the former Township Solicitor during the meeting is just as clearly not protected by the attorney-client privilege. Such a comment allegedly made by the former township solicitor has absolutely nothing to do with securing or offering legal advice regarding an opinion of law or providing legal services or assistance in a pending legal proceeding. *Rhone–Poulenc Rorer Inc.,* 32 F.3d at 862. Nor does the comment disclose a confidential communication made to the solicitor by the board of supervisors

The fact that the remark allegedly occurred at a closed or executive session of the Board of Supervisors and the Township Solicitor does not alter the result. As one Court has stated, "any executive session privilege should not prevent disclosure necessary to a legal inquiry under federal civil rights laws. Otherwise, governmental bodies would be able to virtually insulate themselves from any accountability for civil rights violations by preventing the disclosure of evidence that could be vital to any federal civil rights claim." *Hinsdale v. City of Liberal, Kansas*, 961 F. Supp. 1490, 1496 (D. Kan. 1997). [2]

---

[2] It is for this very reason that Defendants' argument that the Pennsylvania Speech and Debate Clause shields the township solicitor's alleged remark must be rejected. *Fowler–Nash v. Democratic Caucus of*

7

Since the Court finds that the attorney-client privilege does not attach to the "terrorist" comment made by the former Township Solicitor, the Defendants' motion for a protective order is denied. Plaintiff's discovery, however, will be strictly limited to the alleged terrorist comment at the Meeting and Plaintiff will not be permitted to discover any other conversations that occurred during this meeting.

---

*Pa. House of Representatives*, 469 F.3d 328, 332 (3d Cir.2006) ("The Pennsylvania Constitution contains a Speech or Debate Clause… [but] it cannot shield a legislator from a violation of federal law.") In addition, Defendants do not allege that at the time he allegedly made the "terrorist" comment, he was involved in any type of legislative drafting or actions. Rather, the purpose of the closed meeting was merely to discuss "litigation" and the township solicitor allegedly made the comment during those discussions.