IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **EXCHANGE 12, LLC** | : CIVIL ACTION |
| | : |
| v. | : NO. 23-3740 |
| | : |
| **PALMER TOWNSHIP, et al.** | : |

MEMORANDUM

SCHMEHL, J.   /s/ JLS                                                                                  AUGUST 21, 2024

      Plaintiff brought this 42 U.S.C. § 1983 action, claiming the substantive and procedural due process rights of its principal and primary manager, Abraham Atiyeh ("Atiyeh"), were violated when the Defendants allegedly developed a scheme to deny Plaintiff the right to develop certain properties in Palmer Township because of Atiyeh's Syrian national origin. The alleged scheme is based on Atiyeh's alleged portrayal by the former Palmer Township Solicitor at a closed meeting as a "terrorist" and by a Palmer Township Board of Supervisor's remark during a public meeting that Atiyeh could be developing the properties for the purpose of "making bombs." Plaintiff has also asserted a claim for violation of the Equal Protection Clause of the 14th Amendment. Presently before the Court is the Defendants' motion for disqualification of Plaintiff's counsel Raymond G. Lahoud, Esq. ("Attorney Lahoud")[1] and for sanctions. The Court heard oral argument on the motion on June 25, 2024. For the reasons that follow, the motion for disqualification is denied and the motion for sanctions is granted, in part.

---

[1] Attorney Lahoud's application to practice in this Court *pro hac vice* was approved by the Court on October 2, 2023. (ECF 8.)

1

Plaintiff filed this suit on September 26, 2023. On October 11, 2023, Defendants filed a motion to strike impertinent and scandalous material pursuant to Fed. R. Civ. P. 12(f). (ECF 10.) In the motion, Defendants argued that any allegations in the Complaint relating to the Township Solicitor referring to Atiyeh as a "terrorist" during a closed session with the Palmer Township Board of Supervisors was protected by the attorney-client privilege, not subject to waiver, and therefore should be stricken from the Complaint.

Plaintiffs filed an Amended Complaint on October 30, 2023. (ECF 16.) As a result, the Court, on October 31, 2023, denied the motion to strike as moot. (ECF 17.)[2] On October 31, 2023, Defendants filed a second motion to strike impertinent and scandalous matter this time from the Amended Complaint pursuant to Fed. R. Civ. P. 12(f) based on attorney-client privilege. (ECF 18.) This motion remains pending.

On December 12, 2023, Attorney Lahoud responded to Defendants' written discovery requests by producing copies of text messages between Atiyeh and former Palmer Township Board of Supervisor David Colver ("Colver") during the period from September 21, 2023 through September 27, 2023, almost all of which were exchanged before this action was filed. Colver was in attendance at the closed meeting in October of 2021 when the former Township Solicitor allegedly made the "terrorist" remark.

The pertinent text messages reveal that on September 21, 2023, Atiyeh send to Colver a document entitled "Affidavit of David Colver.pdf." ECF 48-1, p.2. On September 25, 2023, Atiyeh sent Colver a text that stated, "Good morning dave [sic] would you please sign affidavit in front of notary." *Id*. 48-1, p. 3. On September 27,

---

[2] This case was originally assigned to the late Honorable Edward G. Smith and was transferred to the calendar of the undersigned on November 30, 2023.

2023, Atiyeh again sent Colver a text which stated, "Hi dave [sic] can you help me with exact day that Bruno [Township Solicitor] made that comment check your calendar please." *Id*.  Atiyeh forwarded the "Affidavit of David Colver.pdf" to Attorney Lahoud by email on November 27, 2023. (ECF 48-3.) A review of the affidavit reveals that it is an undated draft affidavit containing the name of Attorney Lahoud's law firm and the name J. Alexander Short, Esquire. (ECF 48-1, p.4.) The affidavit also relates directly to the subject matter of the attorney-client privilege asserted in Defendants' motion to strike filed on October 31, 2023. *Id.*

On January 18, 2024, despite the pending motion to strike, Attorney Lahoud made overtures to defense counsel about scheduling depositions of two former Palmer Township Board of Supervisors and one former and one current Palmer Township Official. ECF 48-3, pp. 5-6. On January 29, 2024, in response to Attorney Lahoud's attempt to schedule depositions, defense counsel sent an email to Attorney Lahoud inquiring, "[D]o you intend to question any witness about statements that we have asserted a privilege over? This includes any statement made during an executive session or other meeting with the Township Solicitor." ECF 48-3, p. 4. On January 30, 2024, Attorney Lahoud responded by email, "We do have an intention to ask about comments Mr. Bruno made to the Board members." ECF 48-3, p.2.

On January 31, 2024, Defendants filed a motion for a protective order, seeking to prohibit Plaintiff and its counsel from seeking discovery into the following:

> • Any and all private communications between and among Township Supervisors and Township officials in which the Township Solicitor was a party; and
> • Any and all legislative activities or current and former Township Supervisors, including any questions relating to any regular or special meeting of the Board of Supervisors, any

**3**

>executive session of the Board of Supervisors, and any vote of the Board of Supervisors.

(ECF 37.)

By letter dated February 16, 2024, defense counsel advised the Court that Attorney Lahoud had not responded to the motion for a protective order in a timely manner and requested that the motion be granted as unopposed. (ECF 38.) By Order dated February 20, 2024, the Court granted the motion for a protective order as unopposed. (ECF 40.) On February 21, 2024, Plaintiff filed a motion for relief under Rule 60(b) of the Federal Rules of Civil Procedure, arguing that a response to the Defendants' motion for a protective order had been actually filed on February 16, 2024, albeit after defense counsel had filed his letter requesting that the motion for a protective order be granted as unopposed. (ECF 41.)

Attorney Lahoud attached to the Rule 60(b) motion a signed affidavit from Colver dated February 17, 2024 in which Colver averred, *inter alia*, that the Township Solicitor had stated at a closed session in October 21, 2021, "why are we negotiating with a terrorist." (ECF 41-2.) Attorney Lahoud has admitted that he edited and shortened this affidavit (apparently the "Affidavit of David Colver.pdf." from September, 2023), but stated that he was "not involved in the private discussions between Mr. Atiyeh and Colver." ECF 49-2 at 5. As a result of Plaintiff's response to the motion for a protective order having been actually filed, albeit untimely, the Court, on February 23, 2024, granted the Plaintiff's motion for relief under Rule 60(b) and vacated its previous order of February 20, 2024 that had granted the Defendants' motion for a protective order as unopposed. (ECF 42.)

Meanwhile, in an email from Attorney Steven Molder, Esq. to defense counsel dated February 20, 2024, Attorney Molder stated:

> I spoke to Anne Marie Panella [another former Board of Supervisor] and she indicated to me that she believes she heard from Mr. Atiyeh in December 2023 by telephone. The conversation was to the effect that she will likely be called upon to testify about what took place in the Executive session and what was said by whom.

(ECF 44-2, p. 15.) On February 26, 2024, the Defendants filed this motion for disqualification.

It is well-settled that one of the inherent powers of any federal courts is the supervision of the lawyers who practice before it. *See In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 161 (3d Cir. 1984); *Commonwealth Ins. Co. v. Graphix Hot Line, Inc.*, 808 F.Supp. 1200, 1203 (E.D. Pa. 1992). As this Court observed in *Graphix Hot Line*, "[c]ourts have vital interests in protecting the integrity of their judgments, maintaining public confidence in the integrity of the bar, eliminating conflicts of interests, and protecting confidential communications between attorneys and their clients." *Id.* As part of their responsibility and authority to protect these interests, courts are empowered to disqualify lawyers from representing particular clients, if warranted. *Id.*; *Henry v. Delaware River Joint Toll Bridge Comm'n*, No. CIV. A. 00–6415, 2001 WL 1003224, at *1 (E.D. Pa. Aug. 24, 2001). However, "even if a court finds that counsel violated the Pennsylvania Rules of Professional Conduct, disqualification is not mandatory." *AgSaver LLC v. FMC Corp.*, No. CIV. A. 11–997, 2011 WL 2274178, at *3 (E.D. Pa. June 9, 2011) (citing *Jordan v. Phila. Housing Auth.*, 337 F.Supp.2d 666, 672 (E.D. Pa. 2004)). In this regard, our Court of Appeals has cautioned that a court:

5

> [S]hould disqualify an attorney only when it determines, *on the facts of the particular case*, that disqualification is an appropriate means of enforcing the applicable disciplinary rule. It should consider the ends that the disciplinary rule is designed to serve and any countervailing policies, such as permitting a litigant to retain the counsel of her choice and enabling attorneys to practice without excessive restrictions.

*United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980)(emphasis added). In addition, a party's "choice of counsel is entitled to substantial deference." *Hamilton v. Merrill Lynch,* 645 F.Supp. 60, 61 (E.D. Pa. 1986). Accordingly, "[disqualification] is a harsh measure, and therefore, 'motions to disqualify opposing counsel generally are not favored.'" *Com. Ins. Co. v. Graphix Hot Line, Inc.*, 808 F. Supp. 1200, 1203 (E.D. Pa. 1992). In addition, "the court must prevent litigants from using motions to disqualify opposing counsel for tactical purposes." *Id*.

"To disqualify opposing counsel, the moving party must clearly show that continued representation would be impermissible." *Regional Employers' Assurance Leagues Voluntary Employees' Beneficiary Ass'n Trust v. Castellano*, No. CIV. A. 03–6903, 2005 WL 856928, at *2 (E.D. Pa. Apr. 12, 2005) (citing *Cohen v. Oasin*, 844 F.Supp. 1065, 1067 (E.D. Pa. 1994)); see also *James v. Teleflex, Inc.*, No. CIV. A. 97–1206, 1999 WL 98559, at *3 (E.D. Pa. Feb. 24, 1999) (party moving for disqualification bears the burden of showing that the representation is impermissible). On the other hand, some courts have concluded that where a court has doubts regarding the existence of an ethical rule violation, they should be construed in favor of disqualification. *AgSaver LLC*, No. CIV. A., 11–997, 2011 WL 2274178, at *3.

Here, the Plaintiff's motion to disqualify is based, in part, on Pennsylvania Rule of Professional Conduct 4.2[3], which provides:

> In representing a client, a **lawyer** shall not communicate about the subject of the representation with a party the **lawyer** knows to be represented by another lawyer in the matter, unless the **lawyer** has the consent of the other lawyer or is authorized by law to do so.

(emphasis added.) "The purpose of Rule 4.2 is to prevent lawyers from taking advantage of uncounselled lay persons and to preserve the efficacy and sanctity of the lawyer-client relationship." *Carter–Herman v. City of Phila.,* 897 F.Supp. 899, 901 (E.D.Pa.1995). In addition, Comment 7 to Rule 4.2 provides that,

> [i]n the case of a represented organization, this Rule prohibits communications with a constituent of the organization who supervises, directs or regularly consults with the organization's lawyer concerning the matter or has authority to obligate the organization with respect to the matter or whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability.

Rule 4,2, cmt. 7.  "The underlying policy and Official Comment to the Rule [4.2] make clear that it was intended to forbid *ex parte* communications with all institutional employees whose acts or omissions could bind or impute liability to the organization or whose statements could be used as admissions against the organization, presumably

---

[3] The Pennsylvania Rules of Professional Conduct as adopted by the Supreme Court of Pennsylvania are applicable to all actions brought in the United States District Court for the Eastern District of Pennsylvania. *See* E.D. Pa. Local Rule 83.6(IV(B).

pursuant to Federal Rule of Evidence 801(d)(2)(D)." *Univ. Patents, Inc. v. Kligman,* 737 F.Supp. 325, 328 (E.D.Pa.1990).[4]

By its own terms, Rule 4.2 only applies to lawyers, not clients, and Defendants have not submitted any evidence that Attorney Lahoud nor other member of his law firm communicated with any of the former or current Board of Supervisors of Palmer Township in general or for the purpose of securing an affidavit from any current or former Board of Supervisor in particular. Therefore, the Court finds that neither Attorney Lahoud nor any lawyer at his law firm violated Rule 4.2.

Defendants also contend that Attorney Lahoud's actions have violated Rule 3.5(d) of the Pennsylvania Rules of Professional Conduct. That Rule provides that a **lawyer** shall not "engage in conduct intended to disrupt a tribunal." Pa. R. Prof. Conduct 3.5(d). Depositions are within the meaning of "tribunal." See Comment [5] to Pa. R. Prof. Conduct 3.5. Specifically, Defendants claim that "Plaintiff and its counsel sought to suborn [current or former Township] officials to violate the privilege and to undermine the authority of the Court to manage discovery." ECF 44-2 at p.10.

Defendants have not cited to any cases that have applied Rule 3.5(d). The one case that Plaintiff cites to, *Huggins v. Coatesville Sch. Dist.*, No. 07-4917, 2009 WL 2973044, at *2 n.ll (E.D. Pa. Sept. 16, 2009) and another found by the Court, *Marino v. Usher*, No. 11-6811, 2013 WL 12146386 at * 2 (E.D. Pa. Nov. 19, 2013), have invoked Rule 3.5(d) where the unprofessional conduct of attorneys disrupted a deposition. That

---

[4] While this Court in *Univ. Patents* concluded that, as a general matter, Rule 4.2 did not cover former employees, the Court left open the possibility that it could based on the status and conduct of the former employee. *Id.* at 328. Here, the status of Colver and Panella as former members of the Board of Supervisors who attended the closed meeting and allegedly informed Atiyeh of the terrorist comment made by the Township Solicitor clearly are covered by Rule 4.2 even though they were both former members of the Board when contacted by Atiyeh.

clearly did not happen here and, therefore, the Court finds that Attorney Lahoud did not violate Pa. R. Prof. Conduct 3.5(d).

Plaintiff's motion to disqualify Attorney Lahoud is also based on Pennsylvania Rule of Professional Conduct 8.4(a) which provides that it is professional misconduct for a **lawyer** to "violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another." The Court finds that Defendants have not provided any evidence that Attorney Lahoud nor any member of his firm directed, caused, suggested or encouraged Atiyeh to communicate with Colver and/or Panella for the purpose of securing an affidavit or otherwise. Rather, it appears that Atiyeh communicated with Colver and Panella on his own. Therefore, the Court finds that neither Attorney Lahoud nor any lawyer at his firm violated Rule 8.4(a).

As a general matter, "[t]here is nothing in the disciplinary rules which restrict a client's right to act independently in initiating communications with the other side, or which requires that lawyers prevent or attempt to discourage such conduct." *See Miano v. AC & R Advertising, Inc.,* 148 F.R.D. 68, 83 (S.D.N.Y.1993) (citing New York City Bar Association Formal Opinion No.1991–2, at 5–6); *Annotated Model Rules of Professional Conduct* 392 (Center for Professional Responsibility, American Bar Ass'n, 3d ed.1996) (counsel is not obligated to "dissuade" his client from communicating with the opposing party).

What distinguishes this case and is most distrubing is that Attorney Lahoud and Atiyeh took these actions while the Defendants' motions to strike and for a protective order were still pending before the Court. Both motions squarely raised the issue that

the Township Solicitor's remarks allegedly made at the closed session in October of 2021 referring to Atiyeh as a terrorist were protected by the attorney-client privilege.

Although the exchange of text messages between Atiyeh and Colver occurred in September of 2023, before either motion had been filed, Atiyeh attempted to contact Panella in December of 2023 while the motion to strike was pending and Attorney Lahoud, by his own admission, edited and shortened the original Colver affidavit while both the motion to strike and the motion for protective order were pending. It is unclear from the record whether it was Attorney Lahoud or Atiyeh who ultimately presented the edited version of the Colver affidavit for him to sign on February 17, 2024. What is clear, however, is that neither Attorney Lahoud nor Atiyeh should have had any contact with Colver or other former or current Township Board of Supervisor while the motions were pending. Also, in regard to Attorney Lahoud, he apparently edited and shortened the Colver affidavit while both motions were still pending.

Furthermore, Attorney Lahoud was aware by November 27, 2023 that Atiyeh had obtained a draft affidavit that was prepared by a member of Attorney Lahoud's firm. Given Attorney Lahoud's receipt of the "Affidavit of David Colver.pdf." on November 27, 2023 and his knowledge that the **motions to strike and for a protective order were still pending as of February 17, 2024**, the Court finds that, while Attorney Lahoud did not violate the letter of any of the Pennsylvania Rules of Professional Responsibility, it was nevertheless incumbent upon Attorney Lahoud to have dissuaded his client from having any further contact with Colver and initial contact with Panella after Defendants filed the motion to strike on October 31, 2023.[5] Attorney Lahoud also should have

---

[5] Even though there was no actual order in place from the Court ruling on the motions to strike and for protective order, the fact that these motions were still pending and sought to preclude Plaintiff and/ or its

refrained from seeking to schedule depositions of current and former Township Officials to ask them about potential privileged matters while the motion to strike was pending and refrained from editing and shortening the "Affidavit of David Colver.pdf.", the edited version of which Colver signed on February 17, 2024, after the motion for a protective order had been filed.

Since the Court finds that Attorney Lahoud did not violate the letter of Pennsylvania Rule of Professional Conduct 4.2, 3.5(d), or 8.4(a), the Court concludes that Defendants have not demonstrated that Attorney Lahoud's continued representation of Plaintiff would be so impermissible as to justify the "draconian" measure of disqualification of counsel. *Univ. Patents*, 737 F. Supp. at 329. Nor does the Court believe the actions of Atiyeh require that the case be dismissed with prejudice. Rather, the Court finds that the most equitable sanction against both Attorney Lahoud and Atiyeh is to have the Colver affidavit of February 17, 2024 stricken from the record and barred from any further use in these proceedings.

An appropriate Order follows.

---

counsel from seeking discovery into "any and all private communications between and among Township Supervisors and Township officials in which the Township Solicitor was a party" should have deterred Attorney Lahoud and Atiyeh from taking any actions that the pending motions sought to preclude.